## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

v.

**CALEB GRAY-BURRISS**,

Defendant.

Case No. 10-cr-00178 (CRC)

## MEMORANDUM OPINION

After a four-week jury trial, Defendant Caleb Gray-Burriss was convicted of embezzling over two hundred thousand dollars from the National Association of Special Police and Security Officers ("NASPSO"), a union of private security guards that he was entrusted with managing. He appealed his conviction to the D.C. Circuit, arguing that his two trial counsel were ineffective for a variety of reasons, including their failure to present crucial witness testimony and general lack of preparedness. He also challenged the trial court's exclusion of a 2009 employment contract that he alleges formed the basis of a viable affirmative defense. The D.C. Circuit remanded the ineffective-assistance-of-counsel claims to this Court for further factual development, and additionally, requested that the Court assess whether consideration of the 2009 employment contract by the trial court would have changed Gray-Burriss's original sentence. Gray-Burriss has since moved for a new trial and for resentencing relying on those same grounds. The Court held an evidentiary hearing on the motion on August 1 and 2, 2016, and

accepted subsequent supplemental briefing. Having closely reviewed the evidence presented both at the hearing and through briefing, it will deny the motion for the reasons discussed below.

## I. Factual and Procedural Background

Defendant Caleb Gray-Burriss founded the National Association of Special Police and Security Officers ("NASPSO") in the 1990s and served the labor union in various high-ranking positions. The government's 19-count Second Superseding Indictment, filed in August 2012, charged Gray-Burriss with "two distinct schemes to steal from the union and its members." United States v. Gray-Burriss, 791 F.3d 50, 53 (D.C. Cir. 2015). The first concerned his alleged misuse of funds held in trust in a NASPSO-sponsored pension account. He was accused of depositing employers' trust contributions into an ordinary checking account and "writing checks on the account to himself, to cash, and to cover the union's operating expenses." Id. The second principal series of counts depicted a lengthy pattern of embezzlement from the union's funds. The remaining counts charged Gray-Burriss with criminal contempt for violating a 2007 consent decree with the union in a related civil case, destruction of subpoenaed documents, witness tampering, and union recordkeeping violations. Id. On December 4, 2012, the jury convicted Gray-Burriss on 18 of the 19 counts.[1] Dec. 4, 2012 Verdict Form, ECF No. 174. And in April 2013, the Court, through former Chief Judge Roberts, sentenced him to 76 months'

---

[1] He was found guilty on Counts One through Six (mail fraud, 18 U.S.C. § 1341), Seven through Thirteen (embezzlement from a labor organization, 29 U.S.C. § 501(c); conspiracy to commit embezzlement from a labor organization, 18 U.S.C. § 371), Fourteen (criminal contempt, 18 U.S.C. § 401(3)), Fifteen (obstructing a grand-jury investigation, 18 U.S.C. § 1512(c)(1)–(2)), Seventeen (failure to file reports required by the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 439(a)), Eighteen (falsification of reports required by the LMRDA, 29 U.S.C. § 439(b)), and Nineteen (failure to maintain in sufficient detail records required by the LMRDA (29 U.S.C. § 439(a)). He was acquitted on Count Sixteen alone (tampering with a witness, 18 U.S.C. § 1512(b)(2)(A), (C)).

imprisonment and ordered him to pay roughly $252,000 in restitution. Apr. 29, 2013 Judgment in a Criminal Case, ECF No. 235.

On appeal to the D.C. Circuit, Gray-Burriss challenged the trial court's exclusion—due to trial counsel's delay in producing the document—of an employment contract that purported to authorize an increase to Gray-Burriss's salary, effective July 1, 2009. See Gray-Burriss, 791 F.3d at 58 (explaining that the employment contract was alleged to have increased his salary to $75,000). The D.C. Circuit acknowledged that a factual dispute remained as to whether the contract's four signatories were authorized to raise Gray-Burriss's salary, and it held that the trial court's exclusion of this document was "too severe a sanction" for Gray-Burriss's discovery violations. Id. at 56. It found the exclusion harmless as to his conviction on Count 8—which charged Gray-Burriss with accepting unauthorized salary payments from December 2007 to March 2011—but concluded that the district court "might well have arrived at a lower loss finding and significantly reduced the defendant's restitution and forfeiture obligations" if the 2009 document had been found to validly authorize a salary increase. Id. at 58–59. The Circuit also suggested that a "lower loss finding [c]ould affect the defendant's term of incarceration," but that it was unlikely given that the applicable Sentencing Guidelines range would not change. Id. at 59 n.3. It accordingly remanded the case to this Court to determine whether the document's erroneous exclusion would lower Gray-Burriss's restitution obligation and the term of his incarceration. See id. at 65.

Within his appeal, Gray-Burriss also raised several ineffective-assistance claims. Because the record was not clear on whether he was entitled to a new trial under the two-step test established by Strickland v. Washington, 466 U.S. 668 (1984), the D.C. Circuit remanded those claims for the district court's consideration. See Gray-Burriss, 791 F.3d at 64. Gray-Burriss has

since filed a motion for a new trial based on ineffective assistance of counsel, or in the alternative, for resentencing because the trial court failed to consider the 2009 employment contract. <u>See</u> Def.'s Mot. for New Trial and for Resentencing ("MNT").

Gray-Burriss's new attorney argues that his previous trial counsel—veteran attorneys Heather Shaner and Patrick Christmas—were constitutionally ineffective in various ways when preparing his defense. Ms. Shaner was initially appointed to represent Gray-Burriss under the Criminal Justice Act ("CJA") after his first indictment in 2010. Throughout 2010 and 2011, she filed a number of motions on his behalf and successfully obtained several continuances in order to negotiate a possible disposition prior to trial. Another CJA attorney, Edward Sussman, entered his appearance in April 2012 to help Shaner prepare for trial. Later that month, the Court set a trial date of November 2, 2012 and ordered the parties to jointly submit by October 24, 2012 suggested voir dire questions and jury instructions and a proposed verdict form. <u>See</u> Apr. 19, 2012, Pretrial Order, at 2, ECF No. 98. On June 20, the parties represented to the Court that they "s[aw] no impediment to proceeding as scheduled on November 2, 2012." June 20, 2012 Joint Status Rep., at 1, ECF No. 116.

A few months shy of the upcoming trial, Gray-Burriss sought new counsel. He retained Mr. Christmas, who entered his appearance in the case on July 27, 2012. Both Shaner and Christmas understood that Christmas had been hired to assume the role of "lead counsel." Evid. Hr'g Tr. 308:3–8. On August 10, shortly after the Court denied Christmas's motion to continue the trial because of scheduling conflicts, Ms. Shaner "delivered two sets of all case files and relevant information" to Christmas. Heather Shaner's Response to Order to Show Cause, at 2, ECF No. 156. The government filed a second (and final) superseding indictment containing 19 counts a few days later, the same day that the Court permitted Attorney Sussman to withdraw.

See ECF Nos. 132–133.  The Court refused to let Shaner withdraw, however, due to her familiarity with the case and her extensive advocacy on behalf of Gray-Burriss.  Christmas again moved to continue the trial two weeks before its scheduled commencement; he warned that "a serious injustice will occur if the Defendant is 'forced' to trial on November 2, 2012."  ECF No. 141, at 2.  The Court rejected this latest effort to delay a trial already beset by lengthy continuances.  It emphasized that the parties had recently foreseen "no impediments to trial-readiness" and that Gray-Burriss was still "represented by able, experienced CJA counsel [i.e. Ms. Shaner] who has been on the case throughout."  Oct. 19, 2012 Mem. Order, at 4, ECF No. 146.

Around that time, the Court also granted the government's motion to preclude the defense from introducing expert testimony, following the defense's noncompliance with discovery requests and failure to respond to the government's motion.  See Oct. 17, 2012 Mem. Order, ECF No. 142.  This setback followed the Court's earlier refusal to appoint an expert forensic accountant for Gray-Burriss at public expense without a greater showing of Gray-Burriss's financial need.  Defense counsel also failed to communicate with the government in advance of the October 24 pretrial-submissions deadline, causing the government to move to file its own versions as joint submissions.  The Court found "both defense counsel's nonfeasance inexcusable" and ordered that they each show cause why they should not be sanctioned and referred for further discipline.  Oct. 25, 2012 Ord. to Show Cause, at 2–3, ECF No. 152.

Shaner pointed to Christmas, explaining that he seldom communicated with her and cut her out of all "strategic legal decisions[,]" Att'y Shaner's Resp. to Ord. to Show Cause, at 3, ECF No. 156, and that she hesitated to confer with government counsel "without permission of the defendant's retained lead counsel of choice."  Id. at 4.  Christmas confirmed that the fault "l[ay]

entirely with [him]" because Shaner had "made herself available at all times," but that he was "literally overwhelmed" with other responsibilities in the weeks leading up to the trial. Att'y Christmas's Resp. to Ord. to Show Cause, at 1, 4, ECF No. 157. Before jury selection in Gray-Burriss's trial commenced, Shaner requested an immediate hearing on the outstanding show-cause order, "assert[ing] that the existence of the unresolved show cause order threatened her professional license and ability to earn a livelihood, and would distract her from being able to provide zealous and effective representation to her client in the trial." Nov. 5, 2012 Minute Ord. The Court denied her request, choosing to resolve the matter after the trial concluded. See id. In making this decision, the Court stated it "was fully confident that [Ms. Shaner] would not falter in her duty to her client[,]" and did not want "to delay the panel of 65 prospective jurors waiting in the jury office who had been pre-screened and summoned specially for this trial, and to bring no further delay to a trial that had been delayed far too long already." Id. The trial concluded on November 28, 2012 with Gray-Burriss' conviction, and the Court dismissed the show-cause order that day.

Gray-Burriss now moves for a new trial, arguing that his counsel were constitutionally ineffective in a number of ways. At the evidentiary hearing on his motion, the Court heard testimony from Gray-Burriss; Shaner, his CJA-appointed trial attorney; Christmas, his self-retained trial attorney; and Bruce Goodman, a former general counsel to the labor union who was not called as a trial witness but whose testimony Gray-Burriss believes could have exonerated him.[2]

_____

[2] Mr. Christmas testified at the hearing that he had suffered a stroke the previous year and as a result his memory was somewhat impaired. Evid. Hr'g Tr. at 258:5–8. He relied on notes from an interview that was conducted weeks before the hearing to refresh his memory of

## II.    Legal Standard

The Court must evaluate Gray-Burriss's motion for a new trial under the standard laid out in Strickland v. Washington, 466 U.S. 668 (1984).  As the Supreme Court had noted even before Strickland, "the right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  But ineffective-assistance doctrine is not a panacea for criminal defendants' misfortunes.  Courts presented with such claims are called on to determine only "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland, 466 U.S. at 686.  It is the defendant's burden to show by a preponderance of the evidence that he is entitled to relief.  See United States v. Soomai, 23 F. Supp. 3d 9, 11 (D.D.C. 2014) (citing United States v. Pollard, 602 F. Supp. 2d 165, 168 (D.D.C. 2009)); see also United States v. Simpson, 475 F.2d 934, 935 (D.C. Cir. 1973).

### A.   Strickland's First Prong

To prevail on an ineffective-assistance claim, a defendant must make two separate showings.  First, he must prove that "counsel's performance was deficient"—that it "fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687–88.  A reviewing court must determine whether counsel acted "reasonabl[y] under prevailing professional norms . . . considering all the circumstances."  Id. at 688; see also Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (reasonableness assessed against "the practice and expectations of the legal community").  Because constitutionally effective assistance can be administered in "countless ways," Strickland, 466 U.S. at 689, the question is not whether representation "deviated from best

---

the events at issue.  The government avowed that Christmas's memory at the time of the pre-hearing interview was sound.  Id. at 269:15–25.

practices or most common custom," <u>Harrington v. Richter</u>, 562 U.S. 86, 88 (2011).  That another strategy "might have been more successful" is not determinative.  <u>United States v. Catlett</u>, 97 F.3d 565, 568 (D.C. Cir. 1996).  Courts must strive to "eliminate the distorting effects of hindsight"—knowledge that counsel's strategy actually failed—and evaluate the challenged conduct "from counsel's perspective *at the time*."  <u>Strickland</u>, 466 U.S. at 689 (emphasis added).  That a "defense strategy did not work out as well as counsel had hoped" does not mean that earlier efforts were objectively deficient.  <u>Harrington</u>, 562 U.S. at 109.  And although "even an isolated error" can support an ineffective-assistance claim if it is "sufficiently egregious," <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy," <u>Harrington</u>, 562 U.S. at 111.

The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and that defense attorneys are to be afforded "wide latitude . . . in making tactical decisions."  <u>Strickland</u>, 466 U.S. at 689.  For that reason, <u>Strickland</u>'s first prong is seldom satisfied.  <u>See</u> <u>Padilla</u>, 559 U.S. at 371 ("Surmounting <u>Strickland</u>'s high bar is never an easy task."); <u>Harrington</u>, 562 U.S. at 105 (instructing that "the <u>Strickland</u> standard must be applied with scrupulous care"); <u>United States v. Moore</u>, 703 F.3d 562, 574 (D.C. Cir. 2012) ("[I]t is very difficult for a convicted defendant to prevail on a claim of ineffective assistance of counsel.").  Attorney performance need only "meet[] . . . a minimal standard of competence." <u>Hinton v. Alabama</u>, 134 S. Ct. 1081, 1088 (2014) (per curiam).  Courts must "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  <u>Harrington</u>, 562 U.S. at 104.  At the same time, rare cases may arise "where the only reasonable and available defense strategy requires" taking a particular action—

for example, "consultation with experts or introduction of expert evidence." <u>Harrington</u>, 562 U.S. at 106.

In order to measure up to this standard, counsel must "make reasonable investigations or . . . make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." <u>Id.</u> at 690. But such choices made after less-than-full investigation "are reasonable [only] to the extent that reasonable professional judgments support the limitations on investigation." <u>Id.</u> The Supreme Court has made clear that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under <u>Strickland</u>." <u>Hinton</u>, 134 S. Ct. at 1089. To be sure, "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" <u>Harrington</u>, 562 U.S. at 109 (quoting <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003)(per curiam)). But courts "may not indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions." <u>Id.</u> (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 526–27 (2003)). In other words, trial decisions avowedly based on ignorance of governing legal principles "cannot be accorded the same presumption of reasonableness as is accorded most strategic decisions." <u>Dixon v. Snyder</u>, 266 F.3d 693, 703 (7th Cir. 2001).

B.  <u>Strickland's Second Prong</u>

Once a counsel's deficiency is established, a defendant must also "affirmatively prove prejudice[,]" i.e. that counsel's performance "undermine[d] the reliability of the result of the proceeding." <u>Strickland</u>, 466 U.S. at 693. Prejudice is established if the defendant demonstrates

"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" means one "sufficient to undermine confidence in the outcome." Id. A different outcome need not have been "more likely than not." Id. at 693. Still, the likelihood of a contrary outcome must have been "substantial, not just conceivable." Harrington, 562 U.S. at 112. For example, prejudice can be established by counsel's failure to lay the foundation for a jury instruction that "would have given jurors a legal basis upon which to vote not guilty," assuming that an acquittal in those circumstances would have been "reasonably probable." United States v. Nwoye, 2016 WL 3213038, *9 (D.C. Cir. June 10, 2016). And naturally, an adverse judgment with substantial evidentiary support is less likely to have been tainted by deficient performance than one with weaker grounding in the record. Strickland, 466 U.S. at 696. A defendant's failure to make the required showing on either Strickland prong defeats an ineffective-assistance claim, and the order of analysis is at the court's discretion. Id. at 697, 700.

### III.    Analysis

Gray-Burriss asserts five independent grounds for his ineffective-assistance claim: his trial counsel's (1) failure to lay a foundation for, and request, a jury instruction on the advice-of-counsel affirmative defense; (2) failure to call a forensic accountant to testify at trial; (3) failure to prepare Gray-Burriss to testify on his own behalf; (4) allegedly fragmentary and ineffectual closing argument; and (5) allegedly inadequate trial preparation (and resulting deficient performance).[3] Because the record discloses no Sixth Amendment violation on any of these

---

[3] In his motion, Gray-Burriss identified two other potential predicates for a Sixth Amendment violation: trial counsel's (1) allegedly inadequate preparation and presentation of jury instructions, and (2) failure to interview material witnesses and present their testimony at trial. See Def.'s MNT 18–20, 29–34. Because Gray-Burriss has failed to present any evidence

grounds under the exacting <u>Strickland</u> standard, the Court will deny Gray-Burriss's motion for a new trial.

A.  <u>Failure to Lay a Foundation for and Request an Advice-of-Counsel Instruction</u>

The cornerstone of Gray-Burriss's ineffective-assistance claim is his trial counsel's failure to secure the admission of witness testimony that he claims would have warranted a jury instruction on an advice-of-counsel affirmative defense for Counts One through Four (all mail-fraud counts).  A defendant is entitled to a jury instruction on this affirmative defense only if he introduces evidence that "(1) he made full disclosure of all material facts to his attorney before receiving the advice at issue; and (2) he relied in good faith on the counsel's advice that his course of conduct was legal."  <u>United States v. DeFries</u>, 129 F.3d 1293, 1308 (D.C. Cir. 1997).  The D.C. Circuit has cautioned that a "district court is required to give this instruction 'if there is any foundation in the evidence sufficient to bring the issue into the case.'"  <u>Id.</u> (quoting <u>United States v. Duncan</u>, 850 F.2d 1104, 1117 (6th Cir. 1988)).  The disclosure prong is satisfied "[s]o long as the primary facts which a lawyer would think pertinent are disclosed, or the client knows the lawyer is aware of them."  <u>Id.</u> at 1309.  A client need not actually adhere to his attorney's legal advice in order to have relied on it in good faith.  <u>Id.</u>  Nor must the attorney have furnished written instructions to her client for the affirmative defense to apply.[4]

Gray-Burriss contends that a statement from NASPSO's former general counsel, Bruce Goodman, would have laid much of the foundation required for an advice-of-counsel instruction.

---

that could conceivably afford relief on these grounds, the Court considers the arguments as withdrawn.

[4]  The case that the government cites in support of its contrary assertion, <u>United States v. West</u>, 392 F.3d 450 (D.C. Cir. 2004), neither says nor implies any such thing.  <u>See</u> Gov't's Opp'n Def.'s MNT n.3 (citing <u>id.</u> at 457).

His trial counsel, however, did not call Goodman at trial. Ms. Shaner instead attempted to introduce Goodman's statements through David Levinson, a former NASPSO attorney who was present when Goodman allegedly told Department of Labor investigators that Goodman had told Gray-Burriss that sponsoring unions could lawfully use pension-fund money to pay their operating expenses as long as it was paid back with interest. See Def.'s Exs. for Evid. Hr'g, Ex. 12 (Trial Tr.) at 170:5–172:23. When Ms. Shaner asked Levinson at trial whether Goodman had made any statements to Labor investigators, the government objected on hearsay grounds. Id. at 170:25. She then proffered to the Court that Levinson would have likely testified as follows: "Bruce Goodman said I told him that he should do that, that that was just fine. . . . Goodman said, yeah, I told him he could do that, and it was—turns out I was completely wrong. I'm not an expert on ERISA law. I shouldn't have told him that." Id. at 172:4-13. Ms. Shaner argued that Goodman's statements were statements against interest and therefore admissible under Rule 804(b)(3) of the Federal Rules of Evidence. For that exception to apply though, the defense must have laid the foundation that Goodman was unavailable to testify. Finding they did not, the Court sustained the government's hearsay objection. Id. at 174:4-7.

Gray-Burriss argues that his trial counsel behaved "inexcusably"—objectively unreasonably—in failing to secure Goodman's presence at trial. Def.'s MNT 14. The Court disagrees, for several reasons. Most significantly, there would have been no evidentiary basis for issuing an advice-of-counsel instruction even with Goodman's testimony. When he testified at the evidentiary hearing, Goodman recounted his specific legal advice to Gray-Burriss as follows: "I advised him that I saw no impediment for the union to borrow monies [from the pension fund] for [a particular Valentine's Day] dance. . . . [but] that he should speak with another attorney, and I specifically mentioned David Levinson." Evid. Hr'g Tr. 141:4–11. Gray-Burriss

remembers this advice more expansively; he testified that Goodman told him "that it was okay to use the pension fund" for union expenses *generally*—"that as long as we returned the money with interest, it wouldn't be a problem." Id. at 160:17–20. Regardless, Gray-Burriss has identified no effort he made to return a dime of the "borrowed" funds—with or without interest—before he agreed to do so in a 2007 consent decree with the union. The Court thus cannot conclude that the defense would have been able to introduce evidence that Gray-Burriss relied in good faith on whichever version of the legal advice Goodman might have given. In addition, Gray-Burriss has also failed to show that he disclosed all material facts to Goodman before the advice was rendered. Goodman testified that at the time he gave the advice, Gray-Burriss had failed to inform him that he had already withdrawn substantial sums of money from the pension account. See id. at 90:22–91:4 (denying any knowledge that Gray-Burriss had already begun commingling putative beneficiaries' funds with his own). Because there would have been "[no] foundation in the evidence sufficient to bring the issue into the case," DeFries, 129 F.3d at 1308, trial counsel did not perform deficiently in failing to pursue an advice-of-counsel instruction. Nor is it substantially likely that calling Goodman would have resulted in Gray-Burriss's acquittal in the absence of such an instruction. Trial counsel's failure to pursue an advice-of-counsel instruction thus affords no basis for a new trial under Strickland.

Even assuming that Gray-Burriss had disclosed all material facts to Goodman and relied in good faith on his advice, Gray-Burriss still could not satify either prong of Strickland— objectively deficient performance and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Declining to locate and call Goodman would have been a perfectly competent tactical decision under the circumstances, even if no other avenues existed for the admission of his testimony.

The Federal Rules of Evidence generally allow witnesses to be cross-examined about any specific instances of prior conduct that are probative of their character for truthfulness or untruthfulness.  Fed. R. of Evid. 608(b).  Subjecting Goodman to cross-examination would have been a treacherous proposition:  Soon before Gray-Burriss's trial, he had lost his Maryland law license for placing client funds in his personal account, failing to pay clients' medical bills from settlement proceeds that he held in trust, failing to maintain a client trust account, and failing to keep required financial records.  Gov't Exs. for Evid. Hr'g, Exs. 7–9.  These actions clearly bear on Goodman's trustworthiness; Ms. Shaner may have understandably wanted to deemphasize any association between him, NASPSO, and Gray-Burriss.

Shaner's testimony at the evidentiary hearing bears this out.  She asserted that she "considered a lot of things" in deciding whether Goodman would be a good witness, including his recent disbarment, the contents of his 2009 Labor Department interview, and the extent to which Gray-Burriss's withdrawals from the pension account actually functioned as loans.  Evid. Hr'g Tr. 92:23.  Although Christmas could not remember Goodman's name, he too testified that "we knew the government would question him about his disbarment."  Id. at 318:10–11.  To be sure, Shaner recalls believing that Goodman was unavailable during the critical months of 2012; her investigator was evidently unable to locate him, so she stopped trying to reach him in July.  See id. at 121:18–23.  But halting these efforts when she did was a perfectly reasonable decision under the circumstances and in light of her limited resources.  After the government produced its likely impeachment materials, Shaner concluded that "I probably could not have used him anyway."  Id. at 122:18–19.  Accordingly, the Court cannot conclude that trial counsel's abortive investigation of Goodman's whereabouts—and the decision not to pursue his testimony— "undermine[d] the reliability of the result of the proceeding."  Strickland, 466 U.S. at 693.

Defense counsel's characterization of the evidence has also taken Rule 804's statement-against-interest exception off the table.  See Fed. R. Evid. 804(a)(5).  The Court seriously doubts whether Goodman's relevant advice to Gray-Burriss—either the version Shaner proferred at trial, or one consistent with Goodman's own recollection—was sufficiently "contrary to [his] proprietary or pecuniary interest" at the time he made the statement.  Id. 804(b)(3)(A).  Losing one's law license would certainly ensure the kind of pecuniary harm contemplated by the rule. But Goodman's alleged advice to Gray-Burriss played no part in his Maryland disbarment.  See Gov't Exs. for Evid. Hr'g, Ex. 8 (Goodman's Disbarment Order).  Nor has Gray-Burriss made any showing that (1) the one-time provision of inaccurate legal advice based on a mistaken assumption is grounds for disbarment in Maryland (or can be a significant contributing factor), (2) Labor Department investigators would likely have relayed his statement to the relevant disciplinary body, and (3) that body might well have revoked Goodman's law license as a result. In sum, the failure to introduce Bruce Goodman's statements at trial did not gravely "undermine[] the proper functioning of the adversarial process."  Strickland, 466 U.S. at 686. The Court thus declines to grant Gray-Burriss's motion for a new trial on this ground.

B.  Failure to Call a Forensic Accountant to Testify at Trial

Gray-Burriss next argues that his trial counsel were ineffective in failing to call a forensic accountant as an expert to testify at trial to support his good-faith defense.  Ms. Shaner had retained an accountant, who contacted the government in September 2011 seeking to review NASPSO's financial records.  Gov't Mot. in Limine 2, ECF No. 147.  The accountant declined to continue indefinitely in the case without satisfactory compensation.  In the months before trial, the Court denied Gray-Burriss's request for payment of an expert accountant at public expense, and also granted the government's motion to preclude the defense's use of experts, because the

deadline for disclosing expert witnesses had passed.  <u>See</u> Def.'s Exs. for Evid Hr'g, Ex. 9 (Oct. 17, 2012 Order to Preclude Expert Witness).

Shaner testified quite critically regarding what she viewed as Christmas's failure to secure testimony from an expert forensic accountant.  She answered affirmatively when asked whether she viewed the lack of an expert as an impediment to going to trial.  She expected such a witness to testify that Gray-Burriss's bookkeeping was "a big mess"—that "[t]his person who was doing all these pieces of paper didn't know their foot from their nose and just didn't know what they were doing."  Evid. Hr'g Tr. 42:16–20.  In other words, an expert might have suggested that Gray-Burriss harbored "a good faith belief that such expenditures benefited NASPSO"—an "honesty of purpose and freedom from the intention to defraud."  Final Jury Instrs. 20, ECF No. 171; <u>see also</u> Evid. Hr'g Tr. 42:21–24 (expert accountant's testimony could have indicated "that Mr. Burriss tried to comply with these instructions and the regulations from the Department of Labor, but this recordkeeping was faulty[.]")

To be sure, "[c]riminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence."  <u>Harrington</u>, 562 U.S. at 106.  This is not one of those cases.  As government counsel demonstrated at the evidentiary hearing, any expert accountant testifying on Gray-Burriss's behalf would have endured a blistering cross-examination about the details of specific questionable transactions.  <u>See</u> <u>id.</u> at 109:6–110:22 (government would have asked the expert accountant if he or she believed an individual could have a "good-faith" basis for destroying records, failing to file tax returns, or purchasing an apartment in Las Vegas, all of which the evidence revealed Gray-Burriss had done).  A decision not to call such an expert then—even if Gray-Burriss had

qualified for CJA funding—would have been a perfectly reasonable trial strategy, considering how severely it might have backfired.

In addition, Gray-Burriss admitted at the evidentiary hearing that Shaner informed him that he could file an affidavit in support of his claimed financial need for use of CJA funds to hire a forensic accountant. <u>See</u> Evid. Hr'g Tr. 182:4–17. He never did. Nor, evidently, did he view the private retention of an accountant as cost-justified, since no accountant worked on the case after Christmas entered his appearance. <u>See</u> <u>id.</u> at 319:7–12 (Christmas indicating that Gray-Burriss "did not offer to pay" for an accountant at any point). While his counsel perhaps could have done more to assist Gray-Burriss in retaining an expert forensic accountant, their performance was hardly deficient because Gray-Burriss knew what needed to be done but did not take the necessary steps to obtain one. <u>See</u> <u>id.</u> at 114:19–115:3; 278:19–21 ("MR. CHRISTMAS: And I did talk to [Gray-Burriss] about him having to pay [for a forensic accountant] because—I think I talked with Ms. Shaner, and she said the Court would not pay it."). The Court also doubts whether an accountant's testimony would have resulted in Gray-Burriss's acquittal on the relevant counts, given the nature and quantum of evidence against him and the fact that his attorneys had pressed (without success) this "sloppiness" argument themselves in support of his good-faith defense. For these reasons, trial counsel's failure to secure the testimony of an expert forensic accountant fails to satisfy <u>Strickland</u>'s standards for proving ineffective assistance of counsel.

C.  <u>Failing to Prepare Gray-Burriss to Testify as a Witness on His Own Behalf</u>

Gray-Burriss next argues that his trial counsel were constitutionally ineffective by failing to adequately prepare him to testify, resulting in a less-than-fully-informed waiver of that right. He maintains that his counsel never conducted a moot cross-examination or even initiated "a

discussion of the positives and negatives of his potential testimony." Def.'s MNT 38. Had he testified, he insists he could have (1) "explained that he was working around the clock on behalf of the union and was only interested in the wellbeing of the union and its members," (2) "explained that he did not intend to wrongfully obtain union funds," (3) "offered direct testimony that his actions may have been sloppy, ill-conceived, or misguided, but were not the product of a criminal intent," and (4) clarified "that he was acting in response to the advice of counsel." Id.

The Court finds neither Strickland prong satisfied on this point. For starters, the Court deems credible the independent testimony of both Shaner and Christmas that they *did* discuss with Gray-Burriss the advantages and disadvantages of testifying on his own behalf. See Evid. Hr'g Tr. 118:23–25 (Examination by government Counsel) ("MS. SHANER: I advised him not to testify. [Q]: Okay. And did you go over the pros and cons with him? MS. SHANER: Yes."); id. at 61:11–13 ("MS. SHANER: I do believe we talked throughout the case as to what he would testify to, if he would testify, and whether or not it would be a good idea."); id. at 297:7–10 (Examination by Gray-Burriss's counsel) ("[Q]: So you didn't prepare Mr. Burriss either for his direct or what you anticipated the cross would be? MR. CHRISTMAS: I can't say that. We talked with him extensively about it. He asked questions. We answered questions."). Gray-Burriss acknowledged as much at the evidentiary hearing, testifying that "[Christmas] figured that the government was going to just rake me over the coals" on cross-examination. Id. at 177:12–13. Shaner also discouraged Gray-Burriss from testifying, "based on all his admissions in the civil [case]" that could be used against him. Id. at 60:5. In these circumstances, trial counsel acted "reasonabl[y] under prevailing professional norms" in declining to expend time and resources on mock examinations that they believed would be fruitless. Strickland, 466 U.S. at 688. Such

"strategic choices made after thorough investigation of law and facts relevant to plausible options" are "virtually unchallengeable." Id. at 690.

The Court also finds it highly unlikely that testimony from Gray-Burriss would have made an acquittal on one or more counts substantially more likely. Shaner affirmed, for example, that she advised Gray-Burriss to accept a plea because of the "overwhelming evidence" against him. Evid. Hr'g Tr. 76:8. [5] And Christmas independently determined that certain evidence was particularly "damning." Id. Based on the magnitude of the evidence against Gray-Burriss, and having witnessed his recent cross-examination by the same government counsel who tried the case, the Court concludes that he cannot satisfy Strickland's prejudice prong. The Court therefore declines to award Gray-Burriss a new trial merely because his trial counsel did not subject him to a moot examination.

    D.  <u>Presentation of Closing Argument</u>

Gray-Burriss also contends that both counsel were constitutionally ineffective in preparing for and presenting the closing argument at trial. Mr. Christmas gave the closing, which he prefaced as follows: "It was decided while you were on your break that I was going to give closing arguments because Ms. Shaner's voice is going. So I'm not going to be as organized as the government, . . . so bear with me if you would[.]" Def.'s MNT 40. Gray-Burriss points to Christmas's introductory comment as an early indication that counsel was not prepared. Shaner disputes this account, stating that they had agreed beforehand that Christmas would give the closing argument. She further opined that she would not have given such a

_____

[5] Gray-Burriss formally waived his attorney-client privilege with respect to trial counsel in anticipation of the evidentiary hearing. May 1, 2016 Notice of Waiver of Attorney-Client Privilege with Respect to Trial Counsel, ECF No. 281.

"limited," "folksy southern gentleman kind of closing[,]" but rather would have "discussed the elements . . . of each charge and gone through it and discussed specific proofs." Id. at 62:17–21. But regardless of who was supposed to do the closing, Shaner agreed that Christmas's closing touched on both major defense themes—that Gray-Burriss had been the target of a vindictive prosecution, and that he was a sloppy record-keeper, but no criminal. See id. at 85:3–14, 314:18–316:1.

The Sixth Amendment accommodates a vast range of advocacy styles. See Strickland, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case."). While there is no question that Christmas's closing could have been more organized or comprehensive, that is often the case when reviewing closing arguments retrospectively. And Gray-Burriss has identified no critical argument or defense theme that Christmas failed to raise in his closing argument. In light of Strickland's acknowledged deference for varying advocacy styles, it would require a dramatic extension of Strickland to deem Christmas's performance objectively deficient. Counsel's presentation of the closing argument therefore provides no basis for granting Gray-Burriss's motion.

E. Counsel's Trial Preparation (and Resulting Performance)

Finally, Gray-Burriss argues that both trial counsel were generally "ineffective throughout the proceedings" because they were "admittedly not prepared to go to trial and were overwhelmed by the charges presented in the indictment." Def.'s MNT 20. He identifies a number of troubling circumstances regarding his attorneys' readiness for trial. Most strikingly, Mr. Christmas stated on October 17, 2012 that because of his caseload, "a serious injustice will result if the Defendant is 'forced' to trial on November 2, 2012." Def.'s Renewed Mot. Cont. Trial 2, ECF No. 141. Christmas avowedly "went into this relationship [with Ms. Shaner] . . .

with the concept I'm going to bully this lawyer and I think I did."  Def.'s Exs. for Evid. Hr'g, Ex. 13 at 124:9-12.  Christmas's failure to consult with Shaner—regardless of what caused it— prevented the defense from working effectively as a team, which meant that Christmas was unable to capitalize on Shaner's familiarity with the case.  And both attorneys acknowledged their rather limited experience in the field of labor law.  Id. at 10:12–15, 262:2–24.  The evidentiary hearing furnished additional support for Gray-Burriss's concern.  Shaner answered "no" when asked whether she believed that Christmas was ready to go to trial in November 2012.  Evid. Hr'g Tr. 38:3.  Christmas's failure to consult with Shaner left her "very uncomfortable," for she "did not feel he'd even thought about this case."  Id. at 38:7–8.

But the Sixth Amendment does not demand perfection.  Gray-Burriss identifies no plausible bases for a successful Strickland claim—no objectively deficient performance, no prejudice—not already subsumed within his other, more narrowly crafted arguments.  A lawyer can perform proficiently despite qualms about her method of preparation, even if her peers would have pursued a different course.  See Harrington v. Richter, 562 U.S. 86, 88 (2011) ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom").  The Court thus declines to grant a new trial on account of trial counsel's allegedly inadequate preparation.[6]

_____

[6]  Although Gray-Burriss failed to argue that the various grounds for ineffective assistance of counsel should be analyzed together under Strickland, the Court will briefly address it.  Since the Supreme Court established a constitutional right to *effective* counsel, the Circuits have split as to whether the cumulative error doctrine applies when considering individual ineffective-assistance-of-counsel claims, i.e. if independent errors should be assessed collectively as well as individually when determining if counsel were constitutionally ineffective.  See, e.g., Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998) (cumulative error doctrine does not apply); Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991) (individual counsel errors should

*          *          *

Apart from raising ineffective-assistance-of-counsel claims, Gray-Burriss also challenges

the district court's exclusion of a July 2009 employment contract—that purportedly increased his

annual salary to $75,000—at sentencing.  Def.'s Exs. for Evid. Hr'g, Ex. 16 ("2009 Employment

Contract"), at 1.  The D.C. Circuit held that the district court erred in excluding the contract from

trial, but given the overwhelming amount of evidence of embezzlement, "the error was harmless

with respect to Gray-Burriss's conviction[.]"  Gray-Burriss, 791 F.3d at 58.  In addition to

culpability, however, the 2009 contract also bears on the extent of Gray-Burriss's liability for

embezzlement under Count 8 of the second superseding indictment because he was convicted of

stealing $37,641.71 in the form of unauthorized salary payments between December 2007 and

March 2011.  See Gov't's Opp'n Def.'s Supplemental Post-Evidentiary Hr'g Br., Ex. A (Verdict

Form), at 7.  If Gray-Burriss was entitled to a higher salary, then some of those payments

(roughly $27,000 between 2009 and 2011) would have been authorized and would not qualify as

embezzlement.  Gray-Burriss, 791 F.3d at 58; see also Gov't's Opp'n Def.'s MNT 12.

Accordingly, because it was less "confident that exclusion of the 2009 contract was harmless

with respect to Gray-Burriss's sentence[,]" the Circuit remanded the issue so that the district

court could determine if consideration of the contract at sentencing would have lowered Gray-

Burriss's restitution and forfeiture obligations.  Id.  And if the district court were to credit the

2009 employment contract and conclude that the restitution amount should be less, then it would

_____

also be assessed cumulatively); see also Forrest v. Florida Dep't of Corr., 342 F. App'x 560, 564
(11th Cir. 2009) ("The Supreme Court has not directly addressed the applicability of the
cumulative error doctrine in the context of an ineffective assistance of counsel claim.").  While
the D.C. Circuit has not yet had an occasion to weigh in on this issue, it has no bearing on the
outcome of this case because the Court concludes that the examples of counsel errors presented
by Gray-Burriss when considered together still do not "f[all] below an objective standard of
reasonableness."  Strickland, 466 U.S. at 687–88.

also be free to revisit whether the "lower loss finding" should affect the length of Gray-Burriss's incarceration. Id. at 59.[7]

The government contends that the July 2009 employment contract does not affect Gray-Burriss's restitution obligations because the contract's signatories lacked the authority to increase Gray-Burriss's salary. To support its argument, the governments point to testimony by two NAPSO board members who testified that after the NAPSO Executive Board had declined to increase Gray-Burriss's salary, he resorted to asking three NAPSO members—who did not belong to the board—to sign it. Gov't's Opp'n Def.'s MNT 10; see also Evid. Hr'g 361:13–364:5. Despite having opportunities both before and after the evidentiary hearing, Gray-Burriss has failed to rebut the government's evidence or to offer any evidence to support the legitimacy of the 2009 employment contract, specifically the basis of its signatories' authority. See Evid. Hr'g 367:19–368:3. Therefore, after examining the evidence presented at the evidentiary hearing and through post-evidentiary hearing briefing, the Court is unable to conclude that the employment contract "validly authorize[d] an increase in salary" and would thus "lead[] it to a different conclusion with respect to the restitution and forfeiture components of Gray-Burriss' sentence." Gray-Burriss, 791 F.3d at 59.[8]

---

[7] The D.C. Circuit and government note that Gray-Burriss's Sentencing Guidelines range of 70 to 87 months would not change despite a lower loss finding, but the Court could still impose a lower sentence at its discretion. See Gray-Burriss, 791 F.3d at 65 n.3; see also Gov't's Opp'n Def.'s MNT 11–13.

[8] Gray-Burriss has recently moved the Court to appoint a new attorney to replace the one currently handling his the present proceedings. Given that the Court has already thoroughly considered the issues raised by Gray-Burriss, it will deny his motion.

## IV. Conclusion

For the foregoing reasons, the Court will deny Gray-Burriss's motion for a new trial, or in the alternative for resentencing, and uphold his restitution obligation and term of incarceration.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: _____April 24, 2017_____